STROBEL, ADMR., *v.* CITY OF CINCINNATI.

(Decided April 2, 1929.)

*Mr. C. J. Petzhold* and *Messrs. Tooker & Strasser,* for plaintiff in error.

*Mr. John D. Ellis,* city solicitor, *Mr. Milton H. Schmidt* and *Mr. Ed. F. Alexander,* for defendant in error.

Ross, J.    This case comes into this court on error from the court of common pleas of Hamilton county, wherein a judgment was rendered upon a verdict in favor of the defendant below, the city of Cincinnati.

The facts are: Some years previous to the initiating of this litigation, a wagon bridge over a small creek in the city of Cincinnati had become unfit for general vehicular traffic, owing to the slipping of one end of the bridge from its supports. This change caused one end of the bridge to sag away from the bank, and the city fenced off this end of the bridge, leaving an opening, however, in the fence from which a small footbridge of planks was thrown over to the bank; this passageway about three and one-half feet wide, being railed in on both

sides with substantial boards to a height of three feet. The opposite end of the bridge, being still flush with the roadway, was not changed in any way, but some twelve feet back from this end of the bridge a board fence was thrown across the road, and an opening in width similar to the one on the other end of the bridge was left in this fence. The sides of the bridge itself were not railed, except for the cantilever beams, which arched from one end of the bridge to the other on either side, and the support rods, which diagonally crossed each other from the arch to the floor of the bridge. A heavy beam or sill ran the full length of the bridge on both sides from bank to bank; the sill being eight inches in height and six inches wide.

A well-defined path ran through the opening in the fence up to the center of the bridge and led away from the further side at the end of the plank gangway.

It was in evidence that the boards in the bridge had become loosened, and there was also evidence that there were a number of holes in the planks constituting the floor of the bridge. The bridge ran in a general east and west direction.

It was in evidence that the water under the bridge was some twelve feet deep.

There was evidence of a comparatively large hole in the south side of the bridge about midway across the same; this hole being some two and one-half feet long by four inches in width.

There was evidence indicating that this hole was not in the bridge at the time the incidents involved in this case occurred.

There was evidence that in the east end of the

bridge, that nearest the fence across the roadway, a depression had been worn which caused the first timber of the bridge to stand up some two or three inches. This depression was in the center of the path, and the ground on either side of the depression was flush and level with the first board of the bridge.

It was also in evidence that the bridge was used commonly by adults and by children walking across it, and that frequently children crossed the bridge on bicycles without dismounting.

Suit was filed by the grandfather of a boy twelve years of age, by the name of Strobel, whose body was found in the stream beneath this bridge. The body of another boy was found in the creek, his head buried in the mud, at a point where the body would have dropped had it been thrown from the bridge above.

The deceased grandson of the plaintiff, Strobel, had been seen a short time previous to the discovery of his body pedaling a bicycle, some two squares away from the bridge, in the company of another boy by the name of Uhlenbrock, who was riding on the handle bars of the bicycle. The bicycle was found at the same time the bodies of the boys were discovered in the creek, suspended over the south edge of the bridge, the bicycle being caught by one of its pedals, and facing in a westerly direction, at a point approximately above the place in the creek where the body of the Uhlenbrock boy was found. The bicycle was uninjured. It is in evidence that one of the holes in the bridge was some five feet east of the point where the bicycle was found.

The body of the Strobel boy, who had pedaled the bicycle, was found underneath the bridge some

fifteen feet northwardly from the point where the body of the Uhlenbrock boy was recovered. There was evidence, however, that one of the witnesses saw the Strobel boy struggling in the water immediately below the south side of the bridge, at a point approximately below where the bicycle was found, and endeavored to rescue him, but failed; the boy sinking below the surface of the water, and his body not being seen again until it was recovered, as just stated. Both boys, when they were taken from the water, were found fully clothed, and both had been drowned; the Uhlenbrock boy, the one who had been riding on the handle bars, having been suffocated, owing to the fact that his head had been driven deeply in the mud at the bottom of the creek.

It was also in evidence that both of these boys had been known to have played in the vicinity of this bridge.

This constitutes substantially the material and relevant evidence in the case.

At the close of plaintiff's testimony, the city, defendant below, moved for an instructed verdict, and renewed this motion at the conclusion of all the evidence in the case. Both motions were overruled.

A number of assignments of error are urged.

■ It is urged that the court erred in giving the following special charge: "I charge you that if you find that the Roll Road bridge across West Fork was in a reasonably safe condition for pedestrian travel crossing said bridge, then the defendant, the city of Cincinnati, was not guilty of negligence in the maintenance of said bridge, and your verdict must be for the defendant."

The giving of this charge was manifestly prejudi-

cial error. It does not refer to the facts in the case, there being no question in this case of injury to a pedestrian. In the next place, when the city modified the bridge by the changes mentioned it became a question of fact as to how far the city had thereby limited the use of this bridge. Originally the bridge had been used for all forms of traffic. The special charge indicates that the court, as a matter of law, had found that the city had limited the use of this bridge to pedestrian traffic. No notice had been posted indicating what use was intended for this bridge, and it was a question for the jury to determine for what uses the city still designed it. The bridge was still open to travel by pedestrians, for single horses, for motorcycles, and for bicycles. It was a question for the jury to determine to what uses the bridge was still open.

■ The second assignment of error is that the court erred in giving the following special charge: "I charge you that the defendant, the city of Cincinnati, was under no legal duty to maintain side railings on the outer edges of the bridge sufficient to prevent bicycles from plunging off said bridge."

This charge was also erroneous and prejudicial, in that it was a question for the jury to determine under all the circumstances of the case, in view of the modified use of the bridge, and its condition, and the fact that it had slipped from its foundations, and was sagging, as to what proper measure should be taken by the city to make it safe for the uses to which the bridge was still open. The court usurped the functions of the jury in instructing the jury that side railings on the outer edge of the bridge, under

these conditions, as a matter of law, were not required.

■ The next assignment of error is that the court erred in giving the following special charge: "I charge you that if you find from the evidence that William Le Roy Strobel was guilty of negligence in the slightest degree, which directly contributed to his decease, your verdict must be for the defendant, the city of Cincinnati."

This court recently held in the case of *Craig* v. *Bartson,* decided March 4, 1929, that a charge similar to the charge given in this case was prejudicial error. However, in the *Craig case* the special charge stood alone, with the exception of the general charge, which properly stated the rule of contributory negligence applicable to children. In the instant case, the court, at the same time that special charge No. 5 was given, gave special charge No. 4, which properly stated the rule as to the contributory negligence of minors.

It is our opinion that the better practice is to require the statement of the rule of negligence applicable to children in the charge upon contributory negligence involving it. But, however, where a special charge is given at the same time, properly stating the rule of contributory negligence as to children, the criticism directed to charges such as given in the *Craig case* does not apply.

It is our opinion, in view of the fact that a special charge was given stating the proper rule as to contributory negligence of children, that the giving of special charge No. 5 was not prejudicial error.

There being therefore such manifest prejudicial error in the case, we would be compelled to reverse

the judgment in this case if it were not that upon a careful examination of the evidence we are convinced that the motions for an instructed verdict, at the conclusion of plaintiff's case and at the conclusion of all the evidence, should have been granted. This conclusion is reached by reason of the fact that the examination of the evidence shows that there was no evidence in the case proving what was the proximate cause of the death of the child. The plaintiff in such a case as this must show by a preponderance of the evidence: (1) That there was a duty upon the defendant, the city; (2) that there was neglect to perform that duty; and (3) that this neglect was the proximate cause of the death of the grandson of the plaintiff.

In the case of *Sobolovitz* v. *Lubric Oil Co.,* 107 Ohio St., 204, 140 N. E., 634, the Supreme Court has laid down the law applicable to inference. The syllabus in the case is:

"1. To entitle the plaintiff in a personal injury suit to have his case submitted to a jury, it is necessary that he produce some evidence upon every element essential to create liability, or produce evidence of a fact upon which a reasonable inference may be predicated to support such element.

"2. An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence.

"3. Where the plaintiff fails to produce any evidence upon an essential element of his case, and no reasonable inference can be drawn from a fact supported by evidence which would tend to prove such element, it is error for the court to submit the case to a jury."

On page 208 of 107 Ohio State (140 N. E., 635), in the opinion, the court said: "While it is true that a jury in the trial of civil cases deals with probabilities, it is limited in that respect to the ascertainment of the probable truth from the evidence and reasonable inferences deducible therefrom. An inference presupposes a premise from which it is deduced, and, as applied to evidence, the premise is some proven fact. The inference arises out of a process of reasoning, or from common experience, that when certain facts exist certain other facts usually co-ordinate therewith, but we find no authority for basing an inference upon an inference, and it therefore does not follow that because one essential element of a right to recover may be inferred from proof all other necessary elements to recover may be inferred therefrom."

Applying the law of this case to the case at bar, it is necessary, before the plaintiff could recover, to infer from the evidence, first, that the children proceeded on the bicycle in the same manner that they were seen some distance away from the bridge; that they rode upon the bridge with such care as is required of children of the same age, experience, and education; that, by virtue of the defects in the bridge, and without negligence as herein to be applied on the part of the bicycle rider, the bicycle was caused to swerve to the side of the bridge and precipitate them into the water.

We feel that only by application of conjecture and guesswork could such an inference be drawn from the facts in this case.

There are many things that could have happened from the time the boys were last seen until the time

their bodies were discovered in the water beneath the bridge. There are many things that these boys could have done on the bridge. There are many ways in which they could have met death. No facts have been presented to demand a reasonable inference that the negligence of the defendant, the city of Cincinnati, granting it to have existed, proximately caused the death of the Strobel boy.

Neither is this a case of *res ipsa loquitur*. This rule is well stated in the case of *Scovanner* v. *Toelke,* 119 Ohio St., 256, at page 261, 163 N. E., 493, 495, decided by the Supreme Court October 17, 1928, in which the court says: "The rule of *res ipsa loquitur* is not a substantive rule of law. It is rather a rule of evidence which permits the jury, but not the court in a jury trial, to draw an inference of negligence where the instrumentality causing the injury is under the exclusive management and control of one of the parties and an accident occurs under circumstances where in the ordinary course of events it would not occur when ordinary care is observed. It is an evidential inference, not controlling upon the jury, but to be considered by the jury under proper instructions. A like inference under like circumstances may be drawn by the court when the court is the trier of the facts."

For these reasons, with full appreciation of the pathetic tragedy involved, we are constrained to sustain the judgment below.

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

CUSHING, P. J., and HAMILTON, J., concur.